```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY
                    CAMDEN VICINAGE
```

| | |
|---|---|
| JAMES PERRY,<br><br>　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>　　Defendant. | Civil No. 19-16123 (RMB)<br><br>**MEMORANDUM OPINION & ORDER** |

**RENÉE MARIE BUMB,** UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon an appeal by Plaintiff James Perry (the "Plaintiff") of the final determination of the Commissioner of Social Security denying Plaintiff's application for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits. For the reasons set forth herein, the Court will **VACATE** the decision of the Administrative Law Judge (the "ALJ") and **REMAND** for further proceedings consistent with this Opinion.

I.　PROCEDURAL HISTORY

On October 2, 2015, Plaintiff filed a Title II application for SSD benefits and a Title XVI application for SSI benefits. [Record of Proceedings ("R.P."), p. 271-78]. Plaintiff alleged a period of disability, beginning on May 1, 2015, due to diabetes

type 2, neuropathy in hands and feet, diverticulitis, and kidney stones. [R.P., p. 111]. Plaintiff's application was denied, first on November 9, 2015 and again upon reconsideration on March 26, 2016. [R.P., p. 157, 169]. On August 15, 2018, Plaintiff attended a formal hearing where Administrative Law Judge Sharon Allard, heard testimony from Plaintiff, his attorney, and vocational expert Andrew Vaughn. [R.P., p. 34].

The ALJ issued a decision on December 5, 2018, denying Plaintiff's application based on her determination that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [R.P., p. 25-26]. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. [R.P., p. 1]. Plaintiff now brings this action requesting judicial review of the ALJ's decision.

II.   **STANDARD OF REVIEW**

When reviewing a final decision of an ALJ regarding disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Hess v. Comm'r Soc. Sec., 931 F.3d 198, n. 10 (3d Cir. 2019); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971)

2

(quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Albert Einstein Med. Ctr. v. Sebelius, 566 F.3d 368, 372 (3d Cir. 2009).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Hess, 931 F.3d at n. 10 (citing Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

3

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The claimant bears the burden of proof at steps one through four, and the Commissioner of Social Security at step five. Hess, 931 F.3d at 201 (citing Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 634 (3d Cir. 2010). Recently in Hess, 931 F.3d at 201-02, the Third Circuit described the ALJ's role in the Commissioner's inquiry at each step of this analysis:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he]

can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience [.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podeworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

### III. FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff, who was 43 years old at the Alleged Onset Date (the "AOD"), most recently worked as a medical transporter. [R.P., 111]. As a medical transporter, Plaintiff testified that he was required to lift patients in and out of vehicles. [Id.]. Plaintiff contends that he had to leave this job because neuropathy in his hands and feet prevent him from helping patients in and out of the vehicles. [R.P., p. 60]. Furthermore, Plaintiff claims that his kidney stone problems require him to remain close to restrooms at all times and take frequent and lengthy breaks, which the job did not allow. [R.P., p. 60-61].

5

### A. *Plaintiff's Medical History*

Plaintiff claims disability due to diabetes type 2, neuropathy in hands and feet, diverticulitis, and kidney stones. [R.P., p. 111]. In addition to these primary impairments, Plaintiff also alleges a variety of secondary impairments, most relevant to this appeal; anxiety disorder, depressive disorder and post-traumatic stress disorder ("PTSD"). [R.P., p. 18].

Plaintiff's diverticulitis has been treated by his primary care physician, Dr. Jennifer Naticchia. [R.P., p. 477]. Following a three-night hospitalization in September 2015 for abdominal pain and acute diverticulitis, Dr. Naticchia, issued a Treating Source Statement, in which she stated that Plaintiff "has many disabling conditions including recurrent kidney stones, newly diagnosed diabetes, neuropathy in his hands and feet, and now he just was hospitalized for diverticulitis. Not to mention side effects of medications and being overwhelmed by all these newly diagnosed problems has also been disabling." [R.P., p. 477]. Dr. Naticchia opined that Plaintiff should not return to work "indefinitely," due to these medical limitations. [R.P., p. 478].

Plaintiff has also been treated for his anxiety, depression, and PTSD at Stable Community Service by Licensed Clinical Social Worker ("LCSW"), Jean Hadley. [R.P., p. 785]. Starting in March 2016, Plaintiff attended weekly therapy

6

sessions with Ms. Hadley and took medication for his ongoing mental health issues. [Id.]. Ms. Hadley reported that among other limitations, Plaintiff's ongoing psychiatric issues resulted in deficiencies in concentration, pace and persistence to the extent he would be off task up to 25% or more of the work day and be absent more than four days per month. [R.P., p. 789]. Ms. Hadley's Treating Source Statement was consistent with Plaintiff's psychiatric evaluation from Stable Community Services diagnosing him with anxiety, depression, and PTSD. [R.P., p. 785].

Since November 2016, Plaintiff has been treated for chronic kidney stones, and the resulting pain, by Dr. Batool Razvi. [R.P., p. 1834]. Dr. Razvi's Medical Source Report acknowledges that Plaintiff's suffers from chronic pain due to kidney stones and diabetic neuropathy, whcih requires him to take Oxycodone. [R.P., p. 1835-36]. Dr. Razvi noted the side effects from this medication is likely to cause Plaintiff several limitations, including being off task for 25% or more of the day and require absences from work of more than four days per month. [R.P., p. 1839].

Plaintiff filled out a self-assessment of his impairments in a Function Report in October of 2015. [R.P., p. 358]. This report indicated his impairments did not have any adverse

7

effects on his ability to get along with others, concentrate, follow instructions, and complete tasks. [Id.].

Plaintiff underwent a consultative examination by a state agency physician, Dr. William Anthony. [R.P., p. 739]. This examination confirmed Plaintiff's diabetic neuropathy. [R.P., p. 742-43]. Furthermore, Dr. Anthony stated, "[i]t was not part of this evaluation, but [Plaintiff] notes he had a recent diagnosis of depression, anxiety, and PTSD for which he requires further evaluation and treatment." [R.P., p. 743].

Doctors from the Disability Determination Services ("DDS"), including Dr. Joseph Udomsaph, Dr. Alka Bishnoi, Dr. Seung Park (collectively, the "DDS Physicians"), examined Plaintiff's medical records and opined on Plaintiff's medical impairments in November 2015 and March 2016. [R.P., p. 119-156]. However, in preparing these reports, the DDS Physicians neither personally examined Plaintiff nor had full access to Plaintiff's medical records, including his psychiatric evaluations from Stable Community Services. [Id.]. Nonetheless, the doctors opined Plaintiff had some postural limitations, no exertional limitations and no non-exertional limitations.

### B. The ALJ's Decision

After examining Plaintiff's claim for disability benefits, the ALJ conducted the five-step inquiry and concluded that

Plaintiff was not disabled. At Step One of the analysis, the ALJ concluded the Plaintiff had not engaged in substantial gainful activity since the AOD of May 1, 2015. [R.P., p. 18]. At Step Two, the ALJ concluded that Plaintiff's "disorders of the urinary tract, kidney disorder, diverticulitis, diabetes mellitus, obesity, obstructive sleep apnea, spinal disorders, vertigo, disorders of the elbow, degenerative disc disease, and thyroid disorders" were severe because they were medically determinable and significantly limit the claimant's ability to perform basic work activities. [R.P., p. 18]. However, the ALJ found that his "hypertension, anxiety disorder and depressive disorder" were non-severe because, "they have not caused more than minimal limitation in the claimant's ability to perform basic work activities." [R.P., p. 18].

At Step Three, the ALJ found the Plaintiff's impairments did not meet the severity of one of the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R.P., p. 15]. At Step Four, the ALJ determined Plaintiff's RFC as follows:

> [t]he claimant is capable of the *exertional* demands of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). with exceptions. The claimant is capable of lifting/ carrying a maximum of 10 pounds at a time and occasionally lifting/ carrying negligible weight such as docket files, ledgers, or small tools; standing/ walking for 2 hours in an 8-hour workday; and sitting for 6 hours in an 8-hour workday. Regarding the *postural* demands of work, the claimant can occasionally climb ramps   and stairs, kneel, stoop, and crouch; cannot crawl of climb ladders, ropes or scaffold. Regarding the *manipulative*

9

> demands of work, the claimant can frequently handle and finger, and occasionally feel. Regarding the *environmental* demands of work, the claimant can occasionally balance on wet moving or uneven surfaces. The claimant cannot have concentrated exposure to temperature extremes of heat and cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. Finally, the claimant will be off-task 10% of the workday due to his impairments.

[R.P., p. 20].

In making this determination, the ALJ assigned "little weight" to the limitations suggested by Plaintiff's treating physicians; Dr. Naticchia, Ms. Hadley and Dr. Razvi. The bulk of the ALJ's analysis focused on medical evidence and opinions from Dr. William Anthony, the DDS Physicians' reports, and Plaintiff's 2015 Function Report. [R.P., p. 22-23].

At Step Five, the ALJ concluded that although the Plaintiff's RFC would not allow him to perform past relevant work. However, the ALJ found that when considering Plaintiff's RFC, age, education, and past relevant work experience, there were jobs that exist in significant numbers in the national economy that he can perform, in specifically as a "call out operator," a "spotter," or an "order clerk." [R.P., p. 25]. As a result, the ALJ determined that Plaintiff was not disabled.

IV. **DISCUSSION**

Among other arguments, Plaintiff asserts that the ALJ erred in discounting the medical opinions of Dr. Naticchia, Ms. Hadley and Dr. Razvi, and, as a result, failed to include appropriate

10

limitations in the RFC determination.  In particular, Plaintiff argues that by discounting these medical opinions, the ALJ failed to account for Plaintiff's deficiencies in concentration, pace and persistence, which result in off-task behavior for up to 25% of the day and absences up to four times a month. This Court agrees that the ALJ failed to provide adequate reasoning for discounting the opinions of Plaintiff's treating physicians.

When determining a claimant's ability to work, the ALJ must consider all relevant evidence, including the medical records, medical source opinions, and the individual's testimony. 20 C.F.R. § 404.1545(a). In weighing medical opinions, the ALJ is entitled to afford a treating physician's opinion with more or less weight based on contradictory medical evidence or upon the extent of supporting explanations. See Plummer v. Apfel, 186 F.3d 422 (3d. Cir. 1999)(citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d. Cir. 1984)). However, the Third Circuit has held that "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports... due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  Rather, an ALJ may only reject a treating physician's opinion based upon specific contradictory evidence. Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

Although Dr. Naticchia was Plaintiff's primary care physician, the ALJ discounted her medical opinions regarding Plaintiff's limitations, stating that "they are conclusory and do not provide supporting objective evidence." [R.P., p. 23]. Likewise, the ALJ afforded little weight to the Plaintiff's therapist, Ms. Hadley, despite five years of weekly therapy sessions and consistent psychiatric examinations. The ALJ reasoned that a LCSW is not an approved medical source and her diagnosis, that Plaintiff suffers from depressive disorder, anxiety disorder and PTSD, was "overly broad and too restrictive." [Id.].  Finally, the ALJ also discounted Dr. Ravzi's opinion because he did not provide a "function-by-function analysis." The ALJ also suggested that Dr. Razvi's opinion was overly broad, too restrictive, and not supported by the record. [Id.]. The ALJ does not cite to any specific medical evidence that is contradictory of these three determinations.[1]

---

[1] Although the ALJ suggests that Plaintiff's self-completed Function Report, dated October 7, 2015, contradicts Ms. Hadley's cognitive limitations, the sole basis for the ALJ's conclusion is that Plaintiff did not check off the boxes to indicate that his disability adversely impacted his abilities to remember, understand, concentrate, get along with others, follow instructions, and complete tasks. [See R.P., p.23 (citing to R.P., p. 358-59)].  Although this may be one basis for discounting Ms. Hadley's opinion, it does not rule out the possibility that Plaintiff's physical conditions may have a significantly adverse impact his mental health.  Notably, Plaintiff filled out this report before he began mental health treatment with Stable Community Services.  As such, the

Instead of relying upon the evaluations from Plaintiff's treating physicians, the ALJ allocated greater weight to opinions from the DDS Physicians, who never examined Plaintiff, and Dr. William Anthony, who only examined Plaintiff once. [R.P., p. 22-23]. Notably, the ALJ gave partial weight to the DDS Physicians because they were "familiar with the program," even though they "did not have the benefit of the latest medical evidence nor the benefit of observing the claimant personally, and they did not incorporate the entirety of the claimaint's limitations." [Id., p.23]. Although the ALJ does not specify the exact amount of weight placed upon the evaluation by Dr. William Anthony, the ALJ appeared to give his opinion significant weight, even though Dr. Anthony only examined Plaintiff once and, admittedly, did not consider Plaintiff's alleged mental health limitations as part of his examination.

In this case, the ALJ's decision fails to sufficiently explain the reasoning, or point to any substantive contradictory evidence, for to justify the rejection of the opinions from Dr. Naticchia, Ms. Hadley, and Dr. Razvi. Because the ALJ's opinion lacked an adequate explanation for discounting the opinions from Plaintiff's treating physicians, this Court is unable to conclude that the ALJ's RFC formulation was supported by

---

conclusory rejection of Ms. Hadley's opinion, without pointing to further contradictory evidence, was unwarranted.

substantial evidence.  In this case, the ALJ's error was not harmless, because the vocational expert testified there would be no available work for someone with Plaintiff's impairments who would be absent for more two days a month. [R.P., p. 89-90].

## V. CONCLUSION

Although valid reasons may exist to justify the ALJ's ultimate conclusion that Plaintiff is not disabled, the failure to adequately explain the reasoning for discounting treating physician opinions precludes this Court from finding that the ALJ's determination was based upon substantial evidence. As a result, the Court will vacate the ALJ's decision and remand for further proceedings consistent with this Memorandum Opinion and Order.

**ACCORDINGLY, IT IS** on this, the **31st** day of **July 2020**, hereby

**ORDERED** that the ALJ's decision, denying Plaintiff's application for Social Security benefits, is **VACATED** and **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order; and it is further

**ORDERED** that the Clerk of the Court shall **CLOSE** this case.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE